Argued February 6, reversed March 2, rehearing denied March 30, 1915.

## PATTERSON v. VETSCH.

(146 Pac. 829.)

**Reformation of Instruments—Instruments Reformable—Unaccepted Option.**

1.   An unaccepted offer of sale is not susceptible of reformation.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

This is a suit by W. J. Patterson against Andreas Vetsch and Peter Vetsch, in which the following facts appear:

On December 24, 1912, defendants wrote and delivered to plaintiff the following letter:

"Portland, Oregon, December 24, 1912.
"Mr. W. J. Patterson, Portland, Oregon—

"Dear Sir: We will give you and your assigns an option to January 10, 1913, to purchase our milk and butter supply business in the City of Portland, Oregon,

conducted under the name 'Damascus Creamery,' including the goodwill, established business, fixtures, auto truck, wagons, and all equipment, with the exclusive right to the use of the name 'Damascus' as a tradename, for the sale of butter and milk in Portland and suburbs, together with the stock of goods on hand at date of sale, all free from encumbrances, at the price of fifty thousand dollars ($50,000.00). This option will be extended to February 20, 1913, provided that on or before January 10, 1913, you pay us twenty-five hundred dollars ($2,500.00) as consideration for such extension, same to apply on the purchase price if a deal is made. Should you elect to purchase hereunder you are to notify us in writing, and pay ten thousand dollars ($10,000.00) earnest-money on or before February 20th next, and then you may have until March 1, 1913, to pay the balance and close the deal. It is understood that in addition to said fifty thousand dollars ($50,-000.00) you, or the purchaser, shall assume and pay the bills for any goods in the way of supplies and equipment, for the carrying on of the business, ordered but not yet delivered at the time of sale to you. You will understand that it is necessary for us to keep orders ahead usually covering from $1,000 to $1,500 worth of goods in order to insure having a supply on hand to keep the business in good running order, and anything like this we expect you to assume. It is further understood that you, or the purchaser shall, if the sale is made, assume and fulfill all of the then existing contracts for the purchase by us of sweet milk and cream.

"If a sale is made we bind ourselves not to put on any retail delivery wagons for butter or milk in the City of Portland or its suburbs within five years from date, nor in any wise to re-engage in the retail butter supply or milk business in said city or its suburbs within that time; excepting that if we should open a wholesale store we may sell butter and milk over the counter at the store, by retail, making no retail deliveries thereof elsewhere than at the store.

"If you or your assigns purchase hereunder, the purchaser shall be bound and shall enter into appropriate writings to lease from us at the same time, for one year, our factory property, being 95 by 100 feet, with the building and equipment now occupied by us, situated at East Seventh Street and Hawthorne Avenue, in the City of Portland, at $250 per month for three months, and $300 per month thereafter, rent to be paid monthly in advance, or shall have the option in lieu thereof, at the time of purchase of the business, to purchase said factory property with the building and equipment at the price of twenty-five thousand dollars ($25,000.00), terms of payment to be mutually agreed upon.

"If you organize a company to purchase hereunder we will, if you wish, each take $500 of the stock on the same terms as other subscribers.

"[Signed]    VETSCH BROS.
"By A. VETSCH."

On January 10, 1913, plaintiff paid to defendants the $2,500 mentioned in the above letter, for the purpose therein mentioned. On June 3, 1913, plaintiff began this suit for the reformation of the above instrument, alleging that, by reason of mutual mistake, the writing does not express the true mutual understanding and interest of the parties thereto; that it was intended by the parties that the offer of sale should include all of defendants' going business, both retail and wholesale, without reservation, together with the Damascus trademark, and defendants' milk stations outside the City of Portland. Then follows the allegation that defendants committed a breach of the agreement before the time fixed for complete performance, by publishing to the general public the declaration that they had not sold their creamery business, either retail or wholesale, but had merely given an option on their retail business; that plaintiff had been damaged by the breach of the

75 Or.—26

contract as reformed, and then follows a prayer for the reformation of the instrument, and for damages for the breach in the sum of $20,000. Defendants in their answer admit the execution and delivery of the writing, the payment of $2,500 as consideration for an extension of the offer to February 20, 1913; deny that there was any mistake as to the terms of the offer; and allege that the writing fully sets forth the terms thereof. Defendants further admit the publication by them of a notice that they had not sold their business, but set up matters in justification thereof, and deny that they ever repudiated or intended to repudiate the terms of the writing sued upon. There are other allegations in both complaint and answer which are not material to this discussion. From a decree in favor of plaintiff, defendants appeal.

Reversed. Rehearing Denied.

For appellants there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. Arthur L. Veazie.*

For respondent there was a brief over the name of *Messrs. Joseph & Haney,* with an oral argument by *Mr. Bert Haney.*

Mr. Justice Benson delivered the opinion of the court.

An inspection discloses the fact that the writing sued upon is a mere offer to sell certain personal property at a specified price, if accepted within a specified time. It will also be noted that the payment of $2,500 mentioned in the offer was paid as consideration for an extension of the option to February 20, 1913, and is not to be treated as a payment upon the purchase price

until the offer of sale is accepted.  We have searched the evidence with great care, and are unable to find any hint therein that plaintiff ever accepted defendants' offer.  (Of course, an unaccepted offer of sale is not susceptible of reformation: *Clarno* v. *Grayson*, 30 Or. 111 (46 Pac. 426.)  It follows that the trial court erred in entering a decree for the reformation of the option.  This view renders a consideration of the other assignments of error unnecessary.

The decree of the lower court is reversed, and a decree will 'be entered dismissing the suit.

REVERSED.  SUIT DISMISSED.  REHEARING DENIED.

MR. JUSTICE BURNETT, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.